STOLLE STONE COMPANY, Appellant, v. MISSOURI PACIFIC RAILWAY COMPANY, Respondent.

St. Louis Court of Appeals, April 6, 1915.

1. **CONTRACTS: Construction: Breach.** Plaintiff, a quarry company, entered into a contract with defendant railroad company, by which plaintiff agreed to pay defendant $300, to be used in constructing a switch to plaintiff's quarry, and by which defendant agreed that when plaintiff had shipped sufficient freight from its quarry to yield $1000 in freight charges, defendant would refund ten per cent of the amounts thereafter collected on freight bills, until the $300 was repaid. In an action for damages for the alleged breach of this contract, predicated upon defendant's removal of the switch ten years after it had been laid in accordance with the contract, *held* that the contract reveals an implied obligation that the switch should remain for such a length of time as would be reasonably sufficient, in due course, considering the business, to permit plaintiff to make sufficient shipments to yield the $300 refund to it according to the terms of the contract, but beyond this implied obligation

there is no undertaking requiring defendant to maintain the switch for any definite period, and hence in the absence of a showing concerning the shipments made and the amount of freight paid, or that plaintiff had not had a reasonable time to reimburse it for its outlay, no right of recovery existed.

2. ———: ———: ———. Plaintiff, a quarry company, entered into a contract with defendant railroad company, by which plaintiff agreed to pay defendant $300, to be used in constructing a switch to plaintiff's quarry, and by which defendant agreed that when plaintiff had shipped sufficient freight from its quarry to yield $1000 in freight charges, defendant would refund ten per cent of the amounts thereafter collected on freight bills, until the $300 was repaid. Several years after the switch had been constructed, a bridge, which formed part of it, was washed out, and after defendant had failed to rebuild the bridge, on plaintiff's request, plaintiff voluntarily rebuilt it. In an action to recover the amount expended in rebuilding the bridge, *held* that the contract merely obligated defendant to put the switch in proper condition in the first instance and did not impose upon it the duty of maintaining it; *held, further*, that inasmuch as plaintiff voluntarily repaired the bridge, the materials placed therein became the property of defendant, under the principle that one may not, in his benevolence, improve the property of another and then recover compensation therefor.

3. ———: **Quantum Meruit: Gratuitous Services.** A person may not, in his benevolence, improve the property of another and then recover compensation therefor, because such would amount to thrusting an obligation upon one without his consent.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

AFFIRMED.

*Glendy B. Arnold* for appellant.

(1) The contract is legal and is not in violation of Secs. 3184 or 3185, R. S. 1909, as contended by defendant. American Central Ins. Co. v. Railroad, 74 Mo. App. 89; Rothchild v. Railroad, 15 Mo. App. 242. (2) Defendant's removal of the track was a breach of its contract and the issue of damages was for the jury. (3) Defendant's removal of the track and carrying

away of plaintiff's materials was a trespass, and the loss of the use and benefit of the materials and labor put into said track by plaintiff are both natural and consequential damages.

*James F. Green* for respondent.

(1) Plaintiff, having pleaded a contract with defendant, must allege and prove a compliance with all of the terms and conditions thereof on its part. Having failed to offer such proof, plaintiff is not entitled to recover under the first count of the petition. Cement Co. v. Ullman, 159 Mo. App. 254; Grain Co. v. Lemar, 125 Mo. App. 142; McCrary v. Thompson, 123 Mo. App. 597; Turner v. Mellier, 59 Mo. 535. (2) The testimony on part of plaintiff shows that the work of repairing the track was a voluntary act on its part, and was not done at the request or instance of defendant. Therefore, no judgment should be entered under the second count of the petition. Hyde v. Honiter, 175 Mo. App. 597; Wagner v. Electric Co., 177 Mo. 64; Ballentine v. Mercer, 130 Mo. App. 615; Allen's Admx. v. Richmond College, 41 Mo. 309. (3) Plaintiff's evidence shows that the cause of action under both counts of the petition was barred by the Statute of Limitations. Sec. 1889, R. S. 1909.

NORTONI, J.—This is a suit for damages on account of an alleged breach of contract. At the conclusion of the evidence introduced on the part of plaintiff, the court directed a verdict for defendant. Plaintiff prosecutes the appeal, and the question for consideration relates to the propriety of the ruling mentioned.

It appears that plaintiff maintains a stone quarry near defendant's railroad in St. Louis county and did so in 1901. A switch track owned by defendant connected with plaintiff's stone quarry, but it became dilapidated and out of repair. Plaintiff, desiring to

transport stone from its quarry over the switch, approached defendant with a view of inducing the reconstruction of a portion of the track. As a result of the negotiations between the parties concerning this matter, they entered into a written contract on September 25, 1901, which was duly signed by both. By the terms of the contract, defendant undertook and agreed to put the spur track for a distance of 450 feet from the Carondelet Branch of its railroad in safe operating condition so as to accommodate the traffic of plaintiff quarry company, and plaintiff agreed to pay in advance to defendant the sum of $300 to be used in part payment for constructing the track. It is provided further, in the contract that, in event and after plaintiff had shipped sufficient freight from its quarry over the spur track to yield defendant $1000 in freight charges, defendant would then refund ten per cent of the amount thereafter collected by it on freight bills until said $300 without interest should be repaid to plaintiff. This contract was entered into on September 25, 1901, and it is averred that defendant breached it in 1911—ten years thereafter—through taking up the spur track and moving it away without the consent of plaintiff and without repaying $300 of it. Because of such alleged breach, damages are prayed in the first count of the petition in the sum of $300.

The evidence tends to prove, and, indeed, is conclusive, that the parties entered into the written contract, as above stated, which will be hereafter set forth in full; that plaintiff paid to defendant the $300 cash in accordance with the terms of the contract and defendant put the spur track in proper condition for use at the time. There is no complaint with respect of this and the case concedes that both parties fully complied with the original undertaking therein—that is, that plaintiff paid the $300 and that defendant put the track in proper condition. It appears, too, that the track was permitted to remain for about ten years—or until

1911—when defendant removed it entirely. There is no evidence, however, in the record tending to prove that plaintiff paid defendant as much as $1,000 in freight during the time or that it paid freight in any amount so far as that matter is concerned. Indeed, the theory of the case presented to the trial court and pursued here in nowise proceeds upon the hypothesis that plaintiff had become entitled to $300 under the terms of the contract because defendant had failed to comply with its bargain to reimburse it after having collected $1000 freight charges from plaintiff on shipments originating from the quarry. The alleged breach of the contract relied upon for a recovery relates rather to what is assumed to be an implied obligation on the part of defendant to maintain the track for plaintiff's use indefinitely, for it is averred that defendant removed the track without plaintiff's consent in 1911, to its damage, etc., in the sum of $300. There is certainly no express stipulation in the contract as to how long defendant should maintain the track or even permit it to remain situate there, and neither is it provided when it might be removed.

Omitting the signatures of the parties, the contract sued upon in full is as follows:

"This Agreement, made and entered into this 25th day of September, 1901, by and between The Missouri Pacific Railway Company, a railway corporation owned and organized under the laws of the State of Missouri, party of the first part, and the Stolle Stone Company, a corporation organized under the laws of Missouri, party of the second part:

"Witnesseth, That:

"Whereas, what is known as the Glendale Quarry Spur on the Carondelet Branch of the Missouri Pacific Railway is not in proper condition for the running and operating of cars over it; and

"Whereas, the said party of the second part is desirous of making shipments of stone and other ma-

terial upon said track for a distance of about four hundred and fifty (450) feet on said spur to its connection with said Carondelet Branch:

"Now, therefore, in consideration of the undertaking by said party of the first part to put the said spur track for a distance of 450 feet from said Carondelet Branch as above stated in safe operating condition, so as to accommodate the traffic of said Stolle Stone Company, the said party of the second part, the Stolle Stone Company, hereby agrees to pay to said party of the first part before the work of repairing said track shall begin the sum of three hundred dollars ($300) to in part cover the costs of putting said track in proper condition; and the said party of the first part hereby agrees, after and in the event it shall receive one thousand dollars ($1000) in freight paid by said Stolle Stone Company in shipments originating on said Glendale Quarry Spur on the Carondelet Branch aforesaid, to refund ten (10) per cent of the amounts thereafter collected on freight bills until said $300, without interest, shall be repaid to said party of the second part."

When we attend to the wording of the contract and consider the evidence given on the part of plaintiff, it appears that defendant performed the full measure of its obligation expressly assumed by putting the spur track in proper condition in 1901. The preamble to the contract recites, first, that the track was out of repair; and, second, that plaintiff desired to make shipments over it. It then proceeds, "Now, therefore, in consideration of the undertaking by said party of the first part (defendant) to put the said spur track for a distance of 450 feet from said Carondelet Branch, as above stated, in safe operating condition, so as to accommodate the traffic of said Stolle Stone Company." The stone company (plaintiff) agreed to pay $300 in advance. The provision then follows to the effect that, in event and after plaintiff had paid defendant as

much as $1000 in freight charges, it should be reimbursed to the amount of $300 so advanced, by receiving a refund of ten per cent of the amounts subsequently collected on the freight bills. But as before said, the latter provision is immaterial, for there is no evidence whatever in the record tending to show a right of recovery with respect to this subject-matter, and, indeed, the suit does not proceed on that theory at all.

By a careful reading of the entire contract it is revealed that no covenant whatever is to be found therein through which defendant undertakes to maintain the spur track at all or to permit it to remain situate there for any definite time. The spur track and the materials of which it was constructed, though situate on plaintiff's land, were the property of defendant, for all of the evidence shows this to be true. Although there is no express stipulation concerning the time defendant should permit the track to remain, from a reading of the contract it appears to clearly reveal an implied obligation to the effect that the track should remain for such a length of time as would be reasonably sufficient in due course considering the circumstances—that is, the business—to permit plaintiff to make sufficient shipments to yield a $300 refund to it according to the terms as by the deduction of ten per cent on shipments made after $1000 freight charges had been collected by defendant. But beyond this implied obligation, there appears to be no undertaking, either express or implied, committing defendant to maintain the track for any definite period. This being true, in the absence of some showing in the evidence concerning the shipments made and the amount of freight paid, or that plaintiff had not had a reasonable time according to the usual course of its business or in the circumstances contemplated by the parties to reimburse its outlay, no right of recovery is shown under the first count of the petition, on the ground of a

189M.A.44

breach of the contract through the act of defendant in removing the track some ten years after it had "put it in condition" as it agreed to do in the first instance.

The court very properly directed a verdict for defendant under the first count of the petition.

The second count of the petition proceeds, it is said by appellant, for damages accrued as for a trespass. But we regard the second count as one sounding in contract. It sets forth the facts pertaining to the contract and the alleged rights of plaintiff thereunder. After so doing, it avers that in 1904 a freshet washed out a bridge in the spur track about sixty feet in length and defendant neglected to repair it, whereupon, it is said, plaintiff purchased the necessary timbers and employed the labor and installed a bridge in the spur track to replace the one washed out, at an expense of $195. It is averred that it was the duty of defendant under its contract—that is, the same contract above copied—to maintain the track in suitable condition and that this duty was breached by it in failing to install the bridge above referred to. Because defendant failed to fulfill its duty in the premises, plaintiff expended $195 in rebuilding the bridge, and thereafter in 1911 defendant tore up and carried away all such materials, to plaintiff's damage in the sum of $195. We discover no obligation, either express or implied, in the contract above set out imposing on defendant the duty of maintaining the track beyond putting it in proper repair in the first instance and this it did in 1901, and certainly no breach may be assigned in respect of that matter.

On considering the evidence relevant to the second count, it appears that plaintiff installed the bridge in quuestion on its own account voluntarily and without any request whatever from defendant to do so. It is true it had notified defendant and requested that the bridge be rebuilt, but defendant omitted to take any steps in the premises. Thereupon, plaintiff went about

the matter of its own volition and wrote defendant, as appears from its letter introduced by it in evidence, that "We have decided to put on a small force of men *on our own account* and commence work on same to-morrow. If you could spare your section gang we would be pleased to have you put them on with our men *at our expense.*" (The italics are ours.) Obviously this shows beyond question that plaintiff voluntarily installed the bridge at its own expense and of its own volition and thus made it a part of—that is, built it into—defendant's property. The principle is that one may not in his benevolence improve the property of another and then recover compensation therefor, because such amounts to thrusting an obligation upon one without his consent. [See Allen's Admx. v. Richmond College, 41 Mo. 302.] But aside from this entirely, the court very properly directed a verdict for defendant under the second count of the petition because under a fair construction of the contract no breach of an obligation, either express or implied, therein appears.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.